Park *v.* The People.

1  263
67h  525

JOHN PARK, JAMES HIGGINS and JOHN RILEY, Plaintiffs in Error, *v.* THE PEOPLE, &c., Defendants in Error.

(GENERAL TERM, THIRD DISTRICT, MARCH, 1869.)

A prisoner under sixteen years of age, convicted of burglary in the third degree, is liable to imprisonment in a State prison, and disqualified until pardoned, to testify as a witness.

So held, where the prisoner had been sentenced, after conviction, to the house of refuge in New York city.

And it seems the statutes, which provide for imprisonment of convicts in a house of refuge, do not relieve them from the disability to testify, which attaches under 2 R. S., 701, § 23.

JOHN PARK, James Higgins and John Riley were jointly indicted, with one Charles Corbin, for the offense of burglary in the third degree.

The defendants, except Corbin, pleaded not guilty to the indictment, and were put upon their trial at a Court of Sessions, held in January, 1869, in and for the county of Rensselaer. Upon the trial a *nolle prosequi* was entered in favor of Corbin, and the district attorney offered to have him sworn as a witness for the people. The counsel for the prisoners objected, and duly proved that Corbin had been previously duly indicted, convicted and sentenced for the crime of burglary in the third degree, and had never been pardoned or restored to his rights and privileges as a citizen.

It appeared, however, that Corbin was under the age of sixteen years when sentenced, and was sentenced to the house of refuge, in New York city, instead of to a State prison.

The court thereupon overruled the objection and allowed the witness to be sworn, and the counsel for the prisoners duly excepted to the decision of the court.

The witness being examined gave material evidence on behalf of the people, and the prisoners were convicted by the jury of the offense for which they stood indicted.

A bill of exceptions having been duly signed and sealed and allowed and a stay of proceedings, the district attorney brought the case before this court by *certiorari.*

*Charles E. Patterson*, for the plaintiffs in error.

*Francis Rising*, for the defendants in error.

Present—MILLER, INGALLS and HOGEBOOM, JJ.

By the Court—MILLER, P. J.    The only question presented in this case arises as to the competency of Corbin to testify on the trial of the prisoners.

The act concerning "crimes and their punishment" (2 R. S., 701, § 23), provides that, "No person sentenced upon a conviction for felony shall be competent to testify in any cause, matter or proceeding, civil or criminal, unless he be pardoned by the governor," &c.    A subsequent provision (§ 30) declares what is meant by the term felony in the following language:    "The term 'felony' when used in this act, or in any other statute, shall be construed to mean an offense for which the offender, on conviction, shall be liable by law to be punished by death or by imprisonment in a State prison." From these provisions it is manifest that in order to disqualify Corbin as a witness, he must have been convicted of a crime for which he was liable to imprisonment in the State prison. He had been convicted for the offense of burglary in the third degree, and the punishment provided for this offense is imprisonment in a State prison; but being under the age of sixteen years, he was sentenced and removed to the house of refuge, established for the reformation of juvenile delinquents in the city of New York, where he was confined until discharged. The sentence being thus changed from imprisonment in the State prison to a different form of punishment, it remains to be considered whether this change in any way affects the competency of the witness.    This involves a consideration of the various statutes under which the modified form of punishment was imposed.

In 1824, the legislature of this State passed "An act to incorporate the Society for the Reformation of Juvenile Delinquents in the City of New York," (S. L. of 1824, chap. 126; 5 Edmond's ed. of Statutes, 206.)    In 1826, this act was

amended so as to require the managers to receive such children as might be convicted in any other city or county, and as might, or in the judgment of the court," &c., "be deemed proper objects." (5 Ed. Stat., 208.) In 1840, an amendment was made to the Revised Statutes which provided that, "whenever any person under the age of sixteen years shall be convicted of any felony, or other crime, the court instead of sentencing such person to imprisonment in a State prison, or county jail, *may order* that he be removed to and confined in the house of refuge," &c., "*unless notice shall have been received* from such society that there is not room in such house for the reception of further delinquents." (5 Edmond's Stat., 724, § 17.) This provision was not entirely mandatory, for in certain cases the court had no power to send to the house of refuge, which would leave them to the exercise of the right to send to the State prison under such circumstances. In the subsequent clause restricting the power to send, the use of the words "may order" evidently indicates, that the power conferred, was a discretionary one, to be exercised as the judgment of the court might dictate, and as the circumstances of the case in view of the statute seemed to require. If we stop here, there appears to be no question, that the power conferred was a discretionary one, to be enforced as might be deemed advisable by the courts.

It is essential, however, to examine some other statutes in in this connection. In 1846, the legislature passed an act for the establishment of a house of refuge for juvenile delinquents in western New York. (Chap. 143 of S. L. of 1846.) The sixteenth section of this act provided that the courts in particular counties, to be designated by the governor, should sentence to said house of refuge, every male under the age of eighteen, and every female under the age of seventeen, "who should be convicted of any felony," and left it discretionary to send offenders, who should be convicted of petit larceny or vagrancy.

Chap. 24, of the Laws of 1850, makes it the duty of the courts, in certain judicial districts, to order all juvenile delin-

quents, by them sentenced, to be removed to the Western House of Refuge. It further provides, that "All such delin-quents, convicted in the first, second, and third judicial districts, shall be ordered by such court to be removed to and confined in the house of refuge," &c., in the city of New York. It is claimed by the counsel for the people, that this is imperative, that the witness was sentenced to the house of refuge, and that, therefore, he was not sentenced for a felony, and not incompetent to testify. It will be noticed that the first clause of the section cited, makes it "the duty" of the court to order the removal, while the latter part of the clause uses the word "shall," which, sometimes, is equivalent to "may."

In the same year, by chap. 304, the sixteenth section of the act of 1846 was amended, and again, by chap. 387, of the Laws of 1852. It would thus appear, from these recognitions of the legislature of the sixteenth section of the act of 1846, that they understood that it still remained in force, and that they did not intend to repeal it. The construction thus placed upon it, tends strongly to show that the "juvenile delinquents" embraced in the act of 1850 were not intended for any juveniles convicted of a felony, who were already provided for; but related to offenders of a less grade. The term "delinquent," in its ordinary signification, implies one who has been guilty of some slight offence, of a very light grade, and not a felon or criminal; and it may well be claimed, in view of the legislative construction referred to, that only such were embraced in the act. There are also strong reasons for such a position, because there is no repealing clause of the sixteenth section of the act of 1846, before referred to. Nor is the provision of the Revised Statutes (5 Edmonds, Stat., p 574, § 17) expressly amended, as would no doubt have been done, if it was intended to alter it. The rule is well settled that a repeal by implication is not favored, and courts are bound to uphold the prior law if the two acts may well subsist together. The earliest act remains in force unless the two are manifestly inconsistent with and repugnant to each other, or unless, in the latest act, some express notice is

Park *v.* The People.

taken of the former, plainly indicating an intention to abrogate it. The presumption is, that the legislature did not intend to interfere with or abrogate any former law relating to the same matter, unless the repugnancy between the two is irreconcilable. (1 Sedg. on Stat. and Const. Construction, 127; *Bowen* v. *Lease,* 5 Hill, 225; *Williams* v. *Potter,* 2 Barb., 316.) I think the two statutes are reconcilable with each other, and especially the latter clause of the first section of the 24th chapter of the act of 1850 with the provisions of the Revised Statutes, as the former is not, under all the circumstances, to be construed as imperative. If it could be regarded as imperative, then every offense of the slightest character, whether tried in the higher courts or those of inferior jurisdiction, would be punishable by imprisonment in the house of refuge, and fines and other penalties imposed by the Revised Statutes would be entirely abrogated. In many cases this would operate with great severity, and such a sweeping change could never have been intended. It follows, from these observations, that the order removing a person under sixteen to the house of refuge, upon conviction, is the exercise of a discretionary power conferred by the statute, and not in conflict with the provision of the Revised Statutes before cited. That provision still remains unrepealed, and has been so regarded in all the various editions of the Revised Statutes which have been published since the act of 1850 became a law.

This view of the subject appears to be consistent with a reasonable interpretation of the various acts of the legislature referred to. The statute defining the word felony was designed to give a definition of the offense which embraced all cases wherein the offender was liable to imprisonment in the State prison, and includes the crime of burglary in the third degree for which Corbin had been convicted.

The subsequent provision, in the humanity which the law extends to persons of immature years, was intended after the conviction had been had, and the liability incurred of imprisonment in the State prison, upon its being ascertained upon

examination that the prisoner was under sixteen years of age, to interpose and ameliorate the punishment by incarceration in an institution reformatory in its character, but not entirely to relieve the party of the disabilities which a conviction of the crime inflicted. Had such been the design, the statute no doubt would have so provided.

It is evident that the court erred in admitting the witness to be sworn and to testify, and for this error the conviction must be reversed.

Judgment reversed.